FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 11, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

THERESA ANN TODD,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

No. 2:17-CV-00199-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

    Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 12, 13. Plaintiff Theresa Ann Todd brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied her applications for Disability Insurance Benefits and Supplemental Security Income under Titles II & XVI of the Social Security Act, 42 U.S.C §§ 401-434 & 1381-1383F. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the

Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Ms. Todd's Motion for Summary Judgment.

## I.     Jurisdiction

Ms. Todd filed her applications for supplemental security income and disability insurance benefits on July 16, 2013. AR 205-10.  Her alleged onset date is May 31, 2013. AR 205. Her application was initially denied on September 25, 2013, AR 120-23, and on reconsideration on January 29, 2014, AR 131-48.

Administrative Law Judge ("ALJ") Virginia M. Robinson held a hearing on August 6, 2015. AR 38-67. On January 28, 2016, ALJ Robinson issued a decision finding Ms. Todd ineligible for disability benefits. AR 20-31. The Appeals Council denied Ms. Todd's request for review on April 6, 2017, AR 1-5, making the ALJ's ruling the "final decision" of the Commissioner.

Ms. Todd timely filed the present action challenging the denial of benefits on June 6, 2017. ECF No. 6. Accordingly, Ms. Todd's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

## II.     Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act.  20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b) & 416.920(b).  Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit.  20 C.F.R. §§ 404.1572 & 416.972.  If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits.  20 C.F.R. §§ 404.1571 & 416.920(b).  If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c) & 416.920(c).  A severe impairment is one that has lasted or is expected to last for at least twelve months,

and must be proven by objective medical evidence.  20 C.F.R. §§ 404.1508-09 & 416.908-09.  If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required.  Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926;  20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings").  If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits.  *Id.*  If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f).  If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends.  *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c).  To meet this

burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III. Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings, and accordingly, are only briefly summarized here. Ms. Todd was 60 years old at the time of her hearing. AR 205. She has completed school through the ninth grade. AR 224. Her previous work experience includes caregiving, housekeeping, and office management. AR 225.

//

# V.    The ALJ's Findings

The ALJ determined that Ms. Todd was not under a disability within the meaning of the Act since May 31, 2013, her alleged onset date. AR 20-31.

**At step one**, the ALJ found that Ms. Todd had not engaged in substantial gainful activity since May 31, 2013, her alleged onset date (citing 20 C.F.R. §§ 404.1571 *et seq.* and 416.971 *et seq.*). AR 22.

**At step two**, the ALJ found Ms. Todd had the following severe impairments: degenerative disc disease; osteoarthritis; hearing loss; obesity; chronic obstructive pulmonary disorder; and edema (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)). AR 22.

At **step three**, the ALJ found that Ms. Todd did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. AR 23-26.

At **step four**, the ALJ found Ms. Todd had the following residual functional capacity.  She can perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations: she can lift or carry up to 20 pounds occasionally and up to 10 pounds frequently; she can stand or walk for approximately 6 hours and sit for approximately 6 hours per 8 hour work week with normal breaks; she can occasionally climb ramps or stairs; she can never climb ladders, ropes, or scaffolds; she can occasionally stoop, kneel, crouch, or

crawl; she can frequently handle and finger; she can occasionally reach overhead; and she must avoid concentrated exposure to excessive noise, vibration, and workplace hazards such as dangerous machinery or working at unprotected heights. AR 26.

The ALJ determined that Ms. Todd is capable of performing past relevant work as a cleaner (housekeeping) and hotel clerk. AR 31. The ALJ found she was capable of performing this work as it is actually and generally performed. *Id.*

Because the ALJ found Ms. Todd capable of performing her past relevant work at step four, the ALJ did not perform a **step five** analysis to determine whether in light of her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Ms. Todd can perform.

## VI.    Issues for Review

Ms. Todd argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, she argues the ALJ erred by: (1) failing to properly weigh the opinion of Mara L. Fusfield, ARNP; (2) failing to find Ms. Todd has medically-determinable fibromyalgia; (3) failing to find Ms. Todd met or equaled Listing 1.02 when the ALJ failed to consider the opinion of Dr. Rox C. Burkett, M.D.; (4) improperly finding Ms. Todd could return to her past relevant work and was not disabled under the Grid Rules; and (5)

discrediting Ms. Todd without specific, clear, and convincing reasons to do so. ECF No. 12 at 4.

## VII.   Discussion

### A. The ALJ did not err in the weighing of the opinion of Nurse Fusfield.

The ALJ gave little weight to the opinions in the record from Nurse Mara L. Fusfield, ARNP. AR 30. First, Nurse Fusfield provided a Physical Functional Evaluation for Washington State Department of Social and Health Services in July 2013. AR 316-18. Nurse Fusfield stated that Ms. Todd was severely limited and unable to meet the demands of sedentary work. AR 318. The ALJ gave little weight to this opinion because it was unsupported by the record and because Nurse Fusfield noted a significant amount of objective testing was needed, so the ALJ classified the opinion as "tentative." AR 30, 317, 318.

Second, Nurse Fusfield also stated in January 2015 that she would assist with disability paperwork because she believed Ms. Todd to be disabled. AR 504. The ALJ also rejected this statement both because it "infringes on an issue reserved to the Commissioner" and because it conflicts with Ms. Todd's activities of daily living. AR 30.

Finally, the ALJ also gave very little weight to the May 2015 Physical Functional Evaluation by Nurse Fusfield that again Ms. Todd was severely limited and unable to meet the demands of sedentary work. AR 30, 542-46. The ALJ

rejected the opinion for "the same reasons" as the other opinions, and she also noted that Nurse Fusfield did not explain how or why Ms. Todd's condition is expected to last 999 months. AR 30, 544.

The opinions of Nurse Fusfield are classified as "other source" opinions. "Other sources" for opinions include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses, and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). An ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996). An ALJ is obligated to give reasons germane to "other source" testimony before discounting it. *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir.1993).

Inconsistency with evidence in the medical record is a germane reason to reject other source testimony. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Despite finding Ms. Todd severely limited, the record shows that Nurse Fusfield described Ms. Todd as doing "a lot better" due to her medication on multiple occasions. AR 348-49, 438. Additionally, there was some diagnostic testing made prior to the May 2015 statement, and while these tests show some evidence of limitations, they do not support the severe limitations opined by Nurse

Fusfield. AR 322-25. These inconsistencies are germane reasons to reject the opinion.

Additionally, the ALJ opined that Nurse Fusfield's opinions were tentative because she recommended numerous diagnostic tests. AR 30. For example, in her July 2013 opinion, Nurse Fusfield does not describe any testing to support her findings, but rather states Ms. Todd needs various laboratory tests, x-rays, and possibly a CT scan. AR 317, 318. The ALJ reasoned that it was unclear how Nurse Fusfield made her findings absent reliable medical evidence. This is a germane reason for rejecting the opinion.

The ALJ also rejected the statement that Ms. Todd is disabled because that is a finding reserved for the Commissioner. This is appropriate. "Conclusory statements . . . regarding the ultimate question of disability are not binding on the ALJ." *Nyman v. Heckler*, 779 F.2d 528, 530 (9th Cir. 1985).

Finally, the ALJ stated that the finding of disability by Nurse Fusfield conflicted with Ms. Todd's daily activities. Inconsistency between allegations by an other source opinion and a claimant's activities is a germane reason to discount the opinion. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).

In sum, the ALJ provided numerous germane reasons for the rejection of Nurse Fusfield's opinions.

**B. The ALJ did not err by failing to find Ms. Todd had severe medically-determinable fibromyalgia.**

At step two in the five-step sequential evaluation for Social Security cases, the ALJ must determine whether a claimant has a medically severe impairment or combination of impairments. An impairment is found to be not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir. 1988) (quoting SSR 85-28). Step two is generally "a de minimis screening device [used] to dispose of groundless claims," and the ALJ is permitted to find a claimant lacks a medically severe impairment only when the conclusion is clearly established by the record. *Webb v. Barnhart*, 433 F. 683, 687 (9th Cir. 2005) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.1996)).

The ALJ found that fibromyalgia was not a medically-determinable impairment. Referring to the notes of Dr. Nina Flavin, M.D., the ALJ found that the diagnosis was not conclusive and that there was no indication further testing was performed to determine if Ms. Todd did have the condition. AR 23. This is supported by the record. Dr. Flavin equivocally stated on December 3, 2013, that the "[c]linical presentation is starting to fit with a diagnosis of fibromyalgia." AR 429. In November 2014, Dr. Flavin again failed to make a conclusive diagnosis,

stating that fibromyalgia "best fits [Ms. Todd's] clinical symptomatology." AR

484. However, Dr. Flavin also noted that "[g]iven the concern for possible

polymyalgia rheumatic," she recommended additional testing of inflammation

markers. *Id*.

Ms. Todd argues that despite a lack of definitive diagnosis in the record, the

ALJ erred by not reaching a different conclusion from the record. However, when

the ALJ presents a reasonable interpretation that is supported by the evidence, it is

not the role of the courts to second-guess it. *Rollins v. Massanari*, 261 F.3d 853,

857 (9th Cir. 2001). The Court "must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d

1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to

more than one rational interpretation, one of which supports the ALJ's decision,

the conclusion must be upheld").

Moreover, Ms. Todd was found to have at least one severe impairment, so

this case was not resolved at step two. Thus, any error in the ALJ's finding at step

two is harmless, if all impairments, severe and non-severe, were considered in the

determination for Ms. Todd's residual functional capacity. *See Lewis v. Astrue*, 498

F.3d 909, 910 (9th Cir. 2007) (holding that a failure to consider an impairment in

step two is harmless error where the ALJ includes the limitations of that

impairment in the determination of the residual functional capacity). The ALJ

specifically noted that despite the finding regarding fibromyalgia, she did consider Ms. Todd's reported pain in machining in the decision. AR 23. Thus, even if the failure to specifically accept fibromyalgia as a severe impairment was in error, it would be harmless.

**C. The ALJ did not err in finding Ms. Todd did not meet Listing 1.02.**

The ALJ gave "particular attention" to Listing 1.02, which determines disability related to major dysfunction of a joint. AR 25. The ALJ determined Ms. Todd did not meet this listing, which Ms. Todd argues was in error.

In particular, Ms. Todd points to evidence in the record that she needed a walker, which demonstrates that she had a sufficient degree of difficulty ambulating that would reach the threshold of Listing 1.02. ECF No. 12 at 14-15. The evidence to which she points, however, is provided either by Ms. Todd or Nurse Fusfield, both whom the ALJ determined were not reliable sources. *See supra* at pp. 9-11; *infra* at pp. 17-20. Likewise, the alleged level of impairment is inconsistent with normal findings in gait and station on examination and a full range of motion and muscle strength. AR 348-49.

**D. The Appeals Council did not err with regard to the opinion of Dr. Rox Burkett, M.D.**

Ms. Todd alleges the Appeals Council erred by failing to consider the February 2016 opinion of Dr. Burkett. AR 637-40. Ms. Todd argues that Dr.

Burkett's findings demonstrated disability. ECF No. 12 at 15. In support of her argument, Ms. Todd relies on the holding in *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228 (9th Cir. 2011). In *Taylor*, the Ninth Circuit found error because the new evidence was not considered at all by the Appeals Council. *See Taylor*, 659 F.3d at 1233 ("Somewhere in the shuffle, Dr. Thompson's psychiatric evaluation and medical source statement were lost, and the Appeals Council never considered them when it denied Taylor's request for review.") Here, the Appeals Council specifically identified Dr. Burkett's letter as new evidence that was considered, but the Appeals Council ultimately determined that Dr. Burkett's opinion did not provide a basis for changing the ALJ's decision. AR 2, 4. *Taylor* is inapplicable.

In addition, the decision is supported by the evidence. Two other doctors, Dr. Norman Staley, M.D., and Dr. Alnoor Virji, M.D., reviewed the same record and offered contrary opinions to Dr. Burkett. AR 72-75, 95-98. The ALJ gave significant weight to these opinions. AR 29. The Appeals Council determined this was not altered by the new evidence. The Court finds no error.

**E. The ALJ did not err by finding Ms. Todd could return to her past relevant work and was not disabled under the Grid Rules.**

Ms. Todd first alleges that the ALJ improperly calculated her residual functional capacity, and that she should have been limited to sedentary work. ECF No. 12 at 16. She relies on the arguments made in prior sections of her briefing. *Id.*

The Court, however, will uphold the ALJ's findings when a claimant attempts to restate the argument that the residual functional capacity finding did not account for all limitations. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

Ms. Todd then alleges that the ALJ erred by failing to adequately assess whether she could return to her previous relevant work. ECF No. 12 at 16-17. The ALJ reached her conclusion that Ms. Todd could perform her past relevant work as a housekeeper and hotel clerk based on her residual functional capacity and the testimony of the vocational expert. AR 31. The ALJ made specific findings regarding a review of the Dictionary of Occupational Titles regarding the housekeeping job. *Id.* While Ms. Todd disagrees with this finding, in reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney*, 981 F.2d at 1019. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina,* 674 F.3d at 1111.

Likewise, there is no error with the finding that Ms. Todd could return to her work as a hotel clerk. Through the use of hypothetical, the vocational expert testified that absent a restriction to simple and routine tasks, the position of hotel clerk would not be precluded. AR 64-65. Ultimately, the ALJ did not include a

restriction for simple and routine tasks in Ms. Todd's residual functional capacity. AR 26. Neither does the record support such a restriction, nor does Ms. Todd argue for one. Ms. Todd bases her argument that the finding she could return to her role as a hotel clerk is precluded because the vocational expert answered affirmatively when asked if the hotel clerk position was primarily computer-based. AR 66. However, the vocational expert found Ms. Todd able to perform the hotel clerk job based on her residual functional capacity as long as it did not include restrictions on simple and routine tasks. AR 64-65. It is reasonable that the vocational expert considered computer usage in her calculations, as her testimony demonstrates she was aware of the requirement. Moreover, Ms. Todd lists computer games among her hobbies, indicating she is not as restricted on computers as this argument suggests. AR 277.

**F. The ALJ properly evaluated Ms. Todd's credibility.**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti,* 533 F.3d at 1039. First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject

the claimant's testimony about the severity of [his] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id.*

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996). Here, the ALJ found that the medically determinable impairments could reasonably be expected to produce some of the symptoms Ms. Todd alleges; however, the ALJ determined that Ms. Todd's statements regarding intensity, persistence, and limiting effects of the symptoms were not entirely credible. AR 27-29. The ALJ provided multiple reasons for discrediting Ms. Todd's subjective complaint testimony. AR *Id.*

First, the ALJ found that the objective medical evidence does not support Ms. Todd's allegations. AR 27-28. Inconsistency between a claimant's allegations and relevant medical evidence is a legally sufficient reason to reject a claimant's subjective testimony. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). The ALJ noted that imaging from July 2013 demonstrated only mild changes or impairments. AR 322-25. Additionally, the ALJ pointed to the findings that Ms.

Todd walked with a normal station and gait; despite pain, had a full range of motion in her knees; and had normal muscle strength. AR 348-49. The record also shows normal examination findings of the chest, lungs, and cardiovascular system and no acute pulmonary process in July 2013, despite smoking a half to full pack of cigarettes a day. AR 331, 352. Additional imaging in December 2014 also resulted in mild findings. AR 469, 471. Medical records from Nurse Fusfield note significant improvement in Ms. Todd's symptoms with medication. AR 29, 348-49, 438.

Additionally, the ALJ accounted for more significant findings in the residual functional capacity. AR 28. For example, to compensate for the moderate to severe degenerative disc disease seen on June 2015 imaging (AR 551-53, 555), the ALJ limited Ms. Todd to light work. AR 28.

The ALJ also based her findings on inconsistent statements in the record. Inconsistent statements regarding symptoms may be a valid reason to disregard a claimant's testimony. *Smolen*, 80 F.3d at 1284. For example, despite stating on her function report that she cooks very little, AR 274, she testified at the hearing that she cooks regularly for her aunt and uncle, AR 51. Likewise, she claimed at the hearing she couldn't do any laundry, AR 51, yet she stated on her function report that she can do her personal laundry except for bedding, AR 275. Despite

allegations of disabling pain, she also described a variety of household chores, such as dishes, vacuuming, mopping, dusting, and cleaning the bathroom. *Id.*

Finally, the ALJ noted that Ms. Todd's history of multiple convictions for driving under the influence weigh on her credibility regarding her explanations for why she cannot drive. AR 29, 276, 408. While this may not be dispositive on its own, it can be considered as an "ordinary technique[] for credibility evaluation." *Smolen*, 80 F.3d at 1284.

In sum, the Court finds that the ALJ provided multiple legally sufficient explanations for her findings regarding Ms. Todd's credibility.

## VIII. Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free from legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 13,** is **GRANTED.**

///

///

///

///

3.  The District Court Executive is directed to enter judgment in favor of Defendant and against Plaintiff.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 11th day of May, 2018.

<em>s/Robert H. Whaley</em><br>
ROBERT H. WHALEY<br>
Senior United States District Judge